UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LARRY W. BAKER, : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. |
| : | |
| EASTERN SCREW COMPANY, alias, : | **Jury Trial Demanded** |
| ROBERTO ROTONDO, alias, : | |
| CHRISTOPHER ROTONDO, and : | |
| JOSEPH SMITH, alias : | |
|     Defendants. : | |

## I.    Introduction

1.    This is an action brought by the Plaintiff, Larry W. Baker, seeking compensatory, punitive and liquidated damages, as well as attorneys' fees, litigation expenses and other equitable relief, arising out of unlawful discrimination in his employment by his former employer, the Eastern Screw Company, alias, its President, Roberto Rotondo, alias, its Vice-President, Christopher Rotondo, alias, and its Chief Executive Officer, Joseph Smith, alias (hereinafter collectively referred to as the "Defendants" unless otherwise indicated expressly or by context) on account of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"), the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws §28-5-1, *et seq.* ("FEPA"), and the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws §42-112-1, *et seq.* ("RICRA").

## II.    Parties

2.    Plaintiff, Larry W. Baker, at all relevant times, was a resident of the Town of Johnson, County of Providence, State of Rhode Island, and is currently a resident of the City of Boynton Beach, County of Palm Beach, and State of Florida.

3. Defendant Eastern Screw Company, alias ("Defendant Eastern Screw") is a corporation duly organized and incorporated under the laws of the State of Rhode Island, with a principal office located at 15 Amflex Drive, Cranston, Rhode Island 02921.

4. Defendant, Roberto Rotondo, alias, at all relevant times, was employed by Defendant Eastern Screw as its President and served as Plaintiff's ultimate supervisor and, on information and belief, was an integral participant in the discriminatory conduct complained of by Plaintiff herein.

5. Defendant, Christopher Rotondo, alias, at all relevant times, was employed by Defendant Eastern Screw as its Vice-President and served as Plaintiff's immediate supervisor and, on information and belief, was an integral participant in the discriminatory conduct complained of by Plaintiff herein.

6. Defendant, Joseph Smith, alias, at all relevant times, was employed by Defendant Eastern Screw as its Secretary and Chief Executive Officer and served as Plaintiff's supervisor and, on information and belief, was an integral participant in the discriminatory conduct complained of by Plaintiff herein.

7. At all relevant times, Plaintiff was employed by Defendant Eastern Screw in Rhode Island as its Director of Manufacturing.

### III. Jurisdiction

8. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because it asserts a claim arising under federal law, specifically, the ADEA. Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. §1367 as they arise out of the same case or controversy. This Court also has jurisdiction over the action pursuant to 28 U.S.C. §§2201 and 2202.

### IV.    Venue

9.   Venue is proper in this Court insofar as each of the Defendants either reside in or is doing business in the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.    Exhaustion of Administrative Remedies

10.   On or about November 8, 2012, the Plaintiff timely filed a charge of age discrimination against the Defendants with the Rhode Island Commission for Human Rights ("RICHR"), RICHR No. 13 EAG 120-50/02 and with the United States Equal Employment Opportunity Commission ("EEOC"), EEOC No. 16J-2013-00032.

11.   After more than one hundred eighty (180) days, but less than two (2) years after the charge was filed, the Plaintiff requested that the RICHR and the EEOC each issue a right to sue letter.

12.   The Plaintiff was thereafter issued notices of right to sue by the RICHR on October 17, 2014 and the EEOC on October 22, 2014.

13.   Accordingly, insofar as Plaintiff satisfied all administrative and/or jurisdictional prerequisites to filing a lawsuit, Plaintiff has timely and properly instituted suit in the within matter.

14.   There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

### VI.    Material Facts

15.   Plaintiff was born on July 9, 1958 and was fifty three (53) years of age at the time his employment was terminated, and is thus in a protected age class.

16.   Plaintiff was hired by Defendants on or about March 1, 2010, and was a valued, loyal, experienced, productive and dedicated employee of Defendants for almost two (2) years.

17. Plaintiff was hired to manage the day-to-day operations of the precision machining business, including quoting jobs, machining, material purchasing, scheduling of jobs, problem solving, customer relations, and the hiring, training and supervising of employees.

18. Upon hiring Plaintiff, Defendants left Plaintiff on his own to resurrect a poorly performing department – the precision machine operations of Defendant Eastern Screw.

19. At the time Plaintiff was hired by Defendants, Plaintiff had thirty (30) years experience in precision machining and management in the aerospace, medical and commercial industries.

20. At the time Plaintiff was hired by Defendants, Defendants did not have any employees with experience in machining or the machining business.

21. When the Plaintiff took over management of the precision machine operations, the skill level of the machinists was extremely low.

22. The Plaintiff subsequently sought to improve the quality of shop personnel.

23. The Plaintiff addressed this challenge by recruiting and hiring the highest level of skilled and talented machinists to work under his management.

24. On information and belief, the employees recruited by Plaintiff currently serve as the backbone of Defendant Eastern Screw's operations.

25. Additionally, at the time Plaintiff took over the precision machine operations, the Defendant Eastern Screw had lost all of its customers with the exception of one.

26. Through very hard work and development of a strong relationship with this customer, Plaintiff was able to salvage this lone customer and lure back many other customers that had been lost due to poor past management, late delivery and poor quality.

27. In addition to taking over an operation that had lost almost all of its customers, Plaintiff determined that four (4) out of the (6) key pieces of equipment within the precision machine operations were inoperable.

28. The physical condition of the working space was no better, with junk and inoperable equipment filling much of the available space.

29. Plaintiff subsequently cleaned up the shop and brokered a deal with a machine tool vendor to acquire a new machining center, thereby upgrading the plant machinery.

30. In addition, Defendant Eastern Screw had no measurement systems in place, including the notable absences of: labor tracking, standards for machining, quality requirements, nor discipline or accountability metrics for employees.

31. Plaintiff subsequently developed and successfully implemented these measuring systems.

32. In short, Plaintiff worked diligently for two (2) years to turn Defendant Eastern Screw into a high quality precision machine shop.

33. As a result of Plaintiff's diligence, Defendant Eastern Screw acquired new machinery, a highly skilled work force, organized and efficient policies and procedures, and ultimately, a solid customer base that was turning a profit.

34. Plaintiff demonstrated an unwavering commitment to Defendant Eastern Screw, working more than 50 hours every week, often including weekends.

35. Moreover, Plaintiff did not call in sick once over the course of two years.

36. Additionally, any time off taken by Plaintiff was planned well in advance.

37. In working diligently to improve the quality of operations, seldom missing a day, often working extra hours, Plaintiff treated this business as if it were his own.

38. During the term of his employment, Plaintiff received repeated verbal praise from Defendants as well as various bonuses, resulting in a 35% increase in Plaintiff's compensation during his two years of service.

### *Adverse Action and Termination*

39. Notwithstanding the forgoing, Plaintiff was called into the main office for a meeting on February 1, 2012 and informed he was being let go effective immediately.

40. Interestingly, Defendants failed to abide by their own progressive discipline policy.

41. Indeed, Plaintiff was not given any prior verbal or written warning or an opportunity to correct any purported deficiency.

42. Plaintiff was stunned to learn of this abrupt decision, particularly with the success he had experienced in turning around the department.

43. On information and belief, Defendants replaced Plaintiff with a younger, lower paid worker.

44. Indeed, Defendants advertised for and hired a younger, unproven, lower paid individual to replace the experienced, but older Plaintiff with proven track record of success for the Defendant and in the machine tooling industry generally.

45. Defendants attracted a much younger replacement employee for Plaintiff by offering partial ownership that could be gained through management of the operation, with no financial investment required on behalf of the new applicant.

46. The above opportunity was never offered to the Plaintiff.

47. Plaintiff subsequently applied for and was granted unemployment compensation by the Rhode Island Department of Labor and Training ("DLT") as Defendants never claimed Plaintiff was terminated for cause.

48.     Nevertheless, *after* the Plaintiff asserted claims of age discrimination against the Defendants, the Defendants suddenly claimed that the Plaintiff had been terminated "for not performing his job functions and duties."

49.     *After* Plaintiff co-filed a Charge of age discrimination with the RICHR and the EEOC, Defendants claimed that the Plaintiff had been terminated for a laundry list of purported reasons ranging from alleged insubordination to purported unauthorized use of the company credit card.

### *Age Discrimination*

50.     Defendants discriminated against Plaintiff in the terms and conditions of his employment on account of his age; specifically, Defendants terminated his employment on February 1, 2012.

51.     Plaintiff was fifty-three (53) years of age at the time of his termination and was within the protected age class under applicable law.

52.     On information and belief, Defendant's intent to discriminate on account of his age is established, in part, because Plaintiff was replaced by a younger worker, thereby establishing a *prima facie* case of age discrimination.

53.     On information and belief, the younger worker that assumed the duties previously conducted by Plaintiff was offered less compensation and benefits than the Defendant had been paying to Plaintiff, thereby giving rise to an inference of age discrimination.

54.     Discriminatory intent is further established by the failure of the Defendant to offer the same opportunity to the Plaintiff, an older, more experienced, and proven performer in the position.

*Pretext and Discriminatory Animus*

55. Adverse employment action based in whole or even in part on account of age constitutes prohibited discrimination.

56. Defendants' patently false and fabricated attempt to justify Plaintiff's termination because the business "took on a partner" was nothing more than a pretext to replace the Plaintiff with a younger worker, which further supports an inference of discriminatory intent.

57. Moreover, Defendants' subsequent claim that the Plaintiff had been terminated for purported job performance reasons was clearly a *post hoc* attempt to fabricate a non-age biased basis for his termination.

58. Pretext supporting an inference of discriminatory intent is further established where, as here, Defendant has asserted multiple, implausible and/or inconsistent reasons for Plaintiff's termination.

59. The latter is supported by the fact that Plaintiff was a longstanding and productive worker for almost two (2) years, with no history of performance related deficiencies, who increased productivity for Defendant by hiring a highly skilled work force and upgrading the machinery, resulting in an overall 35% increase in Plaintiff's compensation while employed by Defendant Eastern Screw.

60. Discriminatory intent is further established insofar as Defendant Eastern Screw failed to follow its own policies and procedures relative to, among other things, employee discipline, performance improvement, and/or termination.

61. Obviously, an abrupt termination after effective and loyal service, without prior notice, warning or opportunity to correct any purported deficiency—or even provide an opportunity for an explanation—is an adverse employment action which gives rise to a compelling inference of discriminatory animus.

*Individual Liability*

62. On information and belief, the determination to terminate Plaintiff and/or to fabricate and support a fabricated basis for Plantiff's termination was made individually and/or jointly among some or all of the Defendants.

63. Under applicable law, individuals, as well as the Defendant Eastern Screw, may be held liable for age discrimination.

*Motivation and Harm*

64. Defendants took adverse employment action against Plaintiff based in whole or in part on account of Plaintiff's age in violation of the ADEA, FEPA, and RICRA.

65. Defendants' wrongful and/or unlawful acts and/or omissions, including, but not limited to, those described herein, are in violation of the ADEA, FEPA, and/or RICRA and were motivated by malice or ill will toward Plaintiff and Defendants otherwise acted in bad-faith and/or with reckless indifference to the statutorily protected rights of Plaintiff.

*Damages*

66. As a proximate result of Defendants' wrongful and/or unlawful discriminatory acts and/or omissions, including, but not limited to, those described herein, Plaintiff suffered, is now suffering, and will continue to suffer emotional and economic injury including, but not limited to, pecuniary losses, loss of income, loss of employment benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, damage to his professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

### VII. Claims for Relief

67. Plaintiff re-alleges each and every allegation contained in paragraphs 1 through 66 of this Complaint in each of the counts below with the same force and effect as if set forth therein.

### Count One
*Age Discrimination in Employment Act,*
*29 U.S.C. § 621, et seq.*

68. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, engaged in unlawful employment discrimination in violation of the ADEA, which has caused Plaintiff to suffer damages as aforesaid and thereby deprived Plaintiff of rights secured under the ADEA.

### Count Two
*Rhode Island Fair Employment Practices Act,*
*R.I.G.L. § 28-5-1, et seq.*

69. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, engaged in unlawful employment discrimination in violation of the FEPA, which has caused Plaintiff to suffer damages as aforesaid and thereby deprived Plaintiff of rights secured under the FEPA.

### Count Three
*Rhode Island Civil Rights Act of 1990,*
*R.I. Gen. Laws §42-112-1, et seq.*

70. Defendants, by their individual and/or concerted acts or omissions, including, but not limited to, those described herein, engaged in unlawful discrimination against Plaintiff in violation of the RICRA, causing Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the RICRA.

### VIII. Prayers for Relief

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring the acts and/or omissions of the Defendants, including, but not limited to those complained of herein, to be in violation of the ADEA, FEPA, and/or RICRA.

2. An injunction directing the Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. Equitable relief, including but not limited to an award of back pay as well as front pay and make him whole for all earnings and benefits he would have received but for Defendants' unlawful discriminatory treatment.

4. An award of compensatory damages.

5. An award of exemplary and/or punitive damages.

6. An award of liquidated damages.

7. An award of prejudgment interest and reasonable attorney's fees and costs.

8. Such other and further relief as this Court deems just and proper.

## IX.   Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## X.   Designation for Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

Plaintiff,
**Larry W. Baker**
By his attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Dated: December 24, 2014**           /s/Richard A. Sinapi
**Richard A. Sinapi, Esq.  (#2977)**
175 Hillside Road
Cranston, RI 02920
Phone:  (401) 944-9692; FAX:  (401) 943-9040
Email:  ras@sinapilaw.com